## LYDIA J. MELE *v.* CITY OF HARTFORD ET AL.
### (AC 30473)

Flynn, C. J., and Alvord and Sullivan, Js.

---

Argued September 15—officially released November 24, 2009

*Mark E. Blakeman,* for the appellant (plaintiff).

*James L. Pomeranz,* for the appellees (defendants).

*Opinion*

SULLIVAN, J. The plaintiff, Lydia J. Mele, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) finding that the injuries to her right hip were not work-related. On appeal, the plaintiff claims that the board improperly

affirmed the commissioner's decision because the evidence in the record did not support the determinations he made and because she made a prima facie case that the defendants, the city of Hartford and its workers' compensation insurer, Constitution State Service Company, failed to rebut. We reverse in part and affirm in part the decision of the board.

The following facts form the background for the present appeal. The plaintiff, a schoolteacher and later a guidance counselor, has been employed by the city of Hartford board of education for more than thirty years. During her career, she sustained numerous work-related injuries. One such injury occurred on October 24, 1996, when the plaintiff fell while using a freight elevator at the school where she was employed. She landed on her right side and experienced bruising on her right buttock, back and knee. Another incident occurred on December 11, 2001, when the plaintiff was hit with a ball thrown by one student at another student. As a result of these injuries, the plaintiff claimed that she developed trochanteric bursitis[1] and degenerative arthritis in her right hip, and she requested approval for treatment of these conditions, including hip replacement surgery, which the defendants denied. The defendants did not contest that injuries resulting from the October, 1996 and December, 2001 incidents would be compensable work-related injuries; rather, the only issue before the commissioner was whether the trochanteric bursitis and degenerative arthritis claimed by the plaintiff were caused by a compensable incident.

On September 24, 2004, the commissioner denied the plaintiff's claims, and she appealed to the board. On September 29, 2005, the board affirmed the decision of the commissioner in part and remanded the case to the

[1] In the record, trochanteric bursitis is interchangeably referred to as abductor tendonosis or abductor tendonitis.

commissioner with direction "to give the [plaintiff] an opportunity to be heard on the causal relationship of her claim and the October [24], 1996 injury." (Internal quotation marks omitted.) *Mele* v. *Hartford*, 4870 CRB-1-04-10 (September 29, 2005). On remand, the sole issue before the commissioner was whether the injury to the plaintiff's right hip was causally related to the October, 1996 fall.[2] On October 3, 2007, the commissioner issued his decision, again denying the plaintiff's claim, and, on October 10, 2008, the board affirmed the decision of the commissioner. The plaintiff has appealed to this court seeking review of the board's decision. Additional facts will be set forth as necessary.

The standard of review of workers' compensation claims is well established. "[W]hen a decision of a commissioner is appealed to the review [board], the review [board] is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . It is the power and the duty of the commissioner, as the trier of fact, to determine the facts. . . . [T]he commissioner is the sole arbiter of the weight of the evidence and the credibility of witnesses . . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . We will not change the finding of the commissioner unless the record discloses that the finding includes facts found without evidence or

---

[2] We note that in the board's October 10, 2008 decision, which is at issue in the plaintiff's appeal, the board incorrectly stated that on remand "[t]he [plaintiff] was given the opportunity to testify at length regarding the injuries she sustained on October [24], 1996 and December 11, 2001 . . . ." At the March 15, 2007 hearing on the remand, the commissioner ruled, and the plaintiff's attorney agreed, that the remand concerned only the 1996 incident, not the 2001 incident. The plaintiff did not appeal from the original decision of the board, which affirmed the finding by the commissioner that the 2001 incident did not cause her hip injuries.

fails to include material facts which are admitted or undisputed. . . . Similarly, [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Greene* v. *Aces Access*, 110 Conn. App. 648, 652, 955 A.2d 616 (2008).

"Our role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Kudlacz* v. *Lindberg Heat Treating Co.*, 70 Conn. App. 559, 800 A.2d 560 (2002).

I

The plaintiff first claims that because all of the expert witnesses, including those found credible by the commissioner, agreed that the trochanteric bursitis in her right hip was causally related to her October, 1996 injury, the dismissal of the bursitis claim should be reversed. We agree.

The record shows that the experts relied on by both sides acknowledged that the bursitis of the right hip was caused, either directly or indirectly, by her compensable work-related injury. The physicians found credible by the commissioner, Wells C. Jacobson and John C. Grady-Benson, both concluded that the bursitis was work-related, and both physicians distinguished the bursitis from the arthritis. Although great deference is given to findings of fact made by the commissioner, the determination that the plaintiff's trochanteric bursitis was not work-related had no support in the record.

The plaintiff began seeking treatment for hip pain in 1999, with Michael S. Aronow, a physician. Aronow diagnosed the pain as trochanteric bursitis and prescribed physical therapy for the plaintiff. In 2002, Gordon A. Zimmerman, another of the plaintiff's physicians,

referred the plaintiff to Grady-Benson, a hip specialist. Grady-Benson's initial diagnosis was trochanteric bursitis due to an abnormal gait. On the basis of radiographic evidence, he changed the diagnosis to include moderate degenerative arthritis, in addition to the bursitis. In December, 2003, Grady-Benson saw the plaintiff and discussed hip replacement surgery, indicating that she would get relief of the arthritic condition but that the hip replacement would not alleviate the bursitis.

The plaintiff also had been referred to Jacobson for an independent medical evaluation. On September 18, 2002, Jacobson issued his first report, stating that he did not "feel that the medical record demonstrates a distinct causal relationship [between] the [plaintiff's] right hip and any work-related injury." In this evaluation, Jacobson did not distinguish between the bursitis and degenerative arthritis, and he noted that the hip injury could not "be evaluated for permanency." He also reviewed many of the plaintiff's other joint ailments, including ankle, knee and shoulder issues. As Jacobson noted, the plaintiff's medical records included the opinions of at least thirteen physicians and were extremely complicated.

Later, in 2004, Jacobson submitted a second report, in which he distinguished between the bursitis and arthritis, stating: "I do not feel that there is any relationship between work injury and the [plaintiff's] degenerative arthritis in her hip. The [plaintiff] does have some tenderness over the trochanter and has been treated for trochanteric bursitis in the past and that may be related to work injury or an abnormal gait secondary to other lower extremity malady which was work related. In terms of the trochanteric bursitis which the [plaintiff] states is persistent, I would estimate that she has a [1 percent] permanent partial disability of her hip that is work related. Again, the degenerative change

here I strongly feel should not be considered work induced."

The defendants refer to the use of the word "may" in Jacobson's latter report; however, the word "may" modifies the two possible explanations he offered: a work-related injury *or* an abnormal gait secondary to a work-related injury. The defendants ignore the next unequivocal statement that the plaintiff "has a [1 percent] permanent partial disability of her hip *that is work related*."[3] (Emphasis added.)

In Grady-Benson's first assessment of the plaintiff, he stated that she "has chronic abductor tendonosis in the right hip as a result of chronic gait abnormalities from her right knee and right ankle work-related injuries." In his deposition, Grady-Benson testified that "it's highly medically probable that the trochanteric bursitis of her right hip is directly related to at least two of the work-related injuries, most specifically the contusion she sustained on [October 24, 1996], in which she fell and landed on her hip, and possibly to the twisting injury she described on [December 11, 2001]."

Although the defendants emphasize the commissioner's finding that the plaintiff was not credible, the relevance of her credibility is limited on this issue. The expert witnesses concurred that the trochanteric bursitis resulted from the plaintiff's abnormal gait, and, although some experts thought it could have resulted directly from the incident, her original diagnoses by Aronow and Grady-Benson both indicated that her abnormal gait was the cause of the bursitis. The plaintiff did not attempt to testify as to the connection of her

---

[3] We note that the determination that the plaintiff has a 1 percent permanent partial disability of her right hip due to bursitis does not resolve or address the question of what portion of her overall hip disability is related to bursitis. The commissioner made no finding as to what portion of her disability is due to bursitis, and he also made no determination of the total permanent partial disability of the right hip.

abnormal gait and the bursitis, and she would not have been competent to do so. Such a conclusion requires expert testimony. Even if she entirely fabricated any *direct* injury to her hip in either incident, no one has disputed that the incidents in question caused the plaintiff injuries to her back and knees, contributing to an abnormal gait. It was the abnormal gait, resulting from the work-related injuries, found compensable and undisputed by the defendants, that the expert evidence showed was the most likely cause of her trochanteric bursitis.

Although great deference is given to the fact finder, no evidence whatsoever exists in the record to refute the proposition that the plaintiff's trochanteric bursitis was caused by anything other than work-related causes. With regard to the bursitis claim, therefore, the conclusion of the board is reversed.

II

The plaintiff next claims that she made a prima facie case by a preponderance of the evidence that her right hip injuries were work-related, and the defendants failed to rebut her case.[4] The plaintiff, therefore, argues that the decision of the commissioner was clearly erroneous and must be reversed. We disagree.

As discussed, the standard of review requires great deference to the trier of fact, and the conclusions made by the commissioner will be overturned on appeal only if they derive from an illegal or unreasonable application to the subordinate facts. Although we already have decided that the commissioner's rejection of the bursitis claim was done without the support of any evidence, we cannot draw that same conclusion with respect to

---

[4] In making her second claim, the plaintiff does not distinguish between her bursitis and arthritis conditions, just as her claims before the commissioner did not distinguish between these two injuries. We therefore consider the plaintiff's second argument to be referring to both of her hip conditions.

the arthritis claim and, therefore, conclude that the plaintiff's second claim lacks merit.

The record shows that both Jacobson and Grady-Benson distinguished between the likely causes of the bursitis and the arthritis experienced by the plaintiff. Evidence also in the record indicated, as noted by the board in its decision, that the hip replacement surgery sought by the plaintiff would correct only the arthritic condition. Grady-Benson informed the plaintiff that she would not get relief for the bursitis through the hip replacement. To the extent that the commissioner's decision denied coverage for the arthritis condition, we cannot say that he committed clear error. We therefore cannot conclude that the plaintiff made a prima facie case that the defendants failed to rebut.

The decision of the workers' compensation review board is reversed only as to the finding that the plaintiff's bursitis was not a compensable work-related injury, and the case is remanded to the board with direction to remand the case to the commissioner with direction to determine what portion of the plaintiff's hip injuries is related to trochanteric bursitis arising out of the October, 24, 1996 incident and is therefore compensable. The decision is affirmed in all other respects.

In this opinion the other judges concurred.